CITY OF COLUMBUS, APPELLEE, *v.* THOMPSON, APPELLANT.

(No. 70-334—Decided February 3, 1971.)

*Mr. John C. Young,* city attorney, *Mr. Thomas S. Erlenbach* and *Mr. John S. Steinhauer,* for appellee.

*Messrs. Harris, Lias & Strip* and *Mr. George Wm. Lias,* for appellant.

CORRIGAN, J. This cause squarely brings into question the constitutional validity of a portion of the "suspicious

person'' ordinance of the city of Columbus. That ordinance, Section 2387.02, as in question here, reads, in part:

"It shall be unlawful for any suspicious person to be in this city. The following shall be deemed suspicious persons:

"* * *

"(g) Any person who wanders about the streets or other public ways or who is found abroad at late or unusual hours in the night without any visible or lawful business and who does not give satisfactory account of himself.''

Appellant attacks this provision of the ordinance on several constitutional grounds. He contends that it violates the Fourth and Fifth Amendments and the due-process clause of the Fourteenth Amendment.

In upholding the constitutionalilty of the ordinance the Court of Appeals found that the ordinance was authorized by R. C. 715.55 and this court's holdings in *Morgan* v. *Nolte* (1881), 37 Ohio St. 23; *Welch* v. *Cleveland* (1917), 97 Ohio St. 311; and *Youngstown* v. *Aiello* (1951), 156 Ohio St. 32.

R. C. 715.55 reads:

"Any municipal corporation may provide for:

"(A) The punishment of persons disturbing the good order and quiet of the municipal corporation by clamors and noises in the night season, by intoxication, drunkenness, fighting, committing assault, assault and battery, using obscene or profane language in the streets and other public places to the annoyance of the citizens, or otherwise violating the public peace by indecent and disorderly conduct, or by lewd and lascivious behavior.

"(B) The punishment of any vagrant, common street beggar, common prostitute, habitual disturber of the peace, known pickpocket, gambler, burglar, thief, watch stuffer, ball game player, a person who practices any trick, game, or device with intent to swindle, a person who abuses his family, and *any suspicious person who cannot give a reasonable account of himself.''* (Emphasis added.)

In the *Morgan case, supra,* the statute, which preceded R. C. 715.55, was held to authorize an ordinance providing for the punishment of any known thief found in a municipality, the court stating in its opinion, at page 25:

"The only limitations to the creation of offenses by the legislative power, are the guaranties contained in the bill of rights, neither of which is infringed by the statute in question. It is a mistake to suppose that offenses must be confined to specific acts of commission or omission. A general course of conduct or mode of life which is prejudicial to the public welfare may likewise be prohibited and punished as an offense. Such is the character of the offense in question."

The ordinance in question in the *Welch case, supra,* provided that "* * * any person found loitering about any bar room * * * or found wandering about the streets, either by day or by night, without being able to give a reasonable and satisfactory account of himself * * * shall be deemed and held to be a suspicious person."

It was held in that case that the ordinance was not "beyond the powers conferred by the home-rule amendment, Article XVIII of the Constitution of Ohio." In the opinion, the court concluded, at page 316:

"We regard that public policy most salutary and most humane which seeks to prevent crime from occurring rather than to punish it after it has occurred. This seems to be the fundamental purpose of the grant of power underlying the statute and the ordinance. We find no constitutional or statutory objection to the ordinance, and the same is therefore valid."

In *Youngstown* v. *Aiello, supra,* the validity of that city's suspicious person ordinance was at issue. The question presented there, however, was whether the ordinance was properly enacted and apparently there was no attack on the constitutional validity of its content. The opinion of the court did note, in passing, the previous holdings in *Morgan* and *Welch.*

We wish to point out that in none of the foregoing cas-

es was the constitutionality of a suspicious person ordinance specifically attacked on the ground that it violated the due-process clause of the Fourteenth Amendment. That question, as indicated above, is now before us.

At the outset, we observe that this court is in accord with the views expressed in *Welch* that the purpose of such ordinances—to prevent crime—is a salutary one. We are also mindful of the value of such ordinances to law enforcement agencies. Nonetheless, we must determine if the language employed herein, to promote crime prevention, comports with fundamental due process.

Basic to any penal enactment is the requirement that it be sufficiently clear in defining the activity proscribed, and that it contain "ascertainable standards of guilt." *Winters* v. *New York* (1948), 333 U. S. 507, 515.

The purpose of such a requirement is, as stated in *Connally* v. *General Construction Co.* (1926), 269 U. S. 385, 391, "* * * to inform those who are subject to it what conduct on their part will render them liable to its penalties * * *. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. * * *"

In *Connally*, at page 329, the Supreme Court cited with approval the decision in *United States* v. *Capital Traction Co.*, 34 App. D. C. 592, in the course of which opinion the appellate court said:

"* * * The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a

punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another.''

Applying these rules to the ordinance under consideration here, we emphasize that the portion of the ordinance involved herein describes a suspicious person as one who ''wanders about the streets or other public ways.'' In *Columbus* v. *De Long* (1962), 173 Ohio St. 81, this court held that an ordinance which made it an offense ''for a prostitute merely to wander about the streets is too indefinite, restrictive and liberty depriving to represent a proper and authorized exercise of the police power and is invalid in such respect.'' In the opinion, it was noted that merely by wandering, without more, a prostitute committed no criminal offense. By a parity of reasoning we conclude that wandering about, as it applies here to all citizens, is also too indefinite, restrictive and liberty depriving to satisfy due-process requirements.

Appellee urges, however, that the Columbus ordinance requires more for prosecution than mere ''wandering about'' and that when properly applied it meets the required standards of due process. This argument apparently is directed to the qualifying language of the ordinance indicating that the only person who will be prosecuted for wandering will be one ''who is found abroad at late or unusual hours in the night without any visible or lawful business and who does not give satisfactory account of himself.''

We must determine, therefore, whether such qualifying conditions save the ordinance. A similar question was presented to the Supreme Judicial Court of Massachusetts in *Alegata* v. *Commonwealth* (1967), 353 Mass. 287, 292, 231 N. E. 2d 201, wherein the court in its opinion said:

''* * * Being abroad in the nighttime no more imports sinister conduct than does the act of sauntering and loitering proscribed by the ordinance held to be invalid in

*Commonwealth* v. *Carpenter,* 325 Mass. 519. Yet the statute literally applies to *all* persons, however innocent their conduct may be, who are abroad at night, arouse the *suspicion* of a police officer, and, subsequently, fail *to give a satisfactory account.* It is hard to see how suspicion of unlawful design or failure to give a satisfactory account, without more, can transform otherwise innocent behavior into a crime. Suspicion, which is an inadequate ground for arrest, is no more satisfactory as a basis for punishment. In holding invalid a statute authorizing arrest and prosecution of a 'suspicious person' the Court of Appeals for the District of Columbia in a well considered opinion said, 'Mere suspicion is no evidence of crime of any particular kind, and it forms no element in the constitution of crime. Suspicion may exist without even the knowledge of the party who is the object of the suspicion, as to the matter of which he is suspected. The suspicion may be generated in the mind of one or more persons without even colorable foundation of truth for the suspicion. *Stoutenburgh* v. *Frazier,* 16 App. D. C. 229, 234-235.'

''The problem with suspicion is that it is a subjective term incapable of providing any intelligible standard to guide either suspect or court. The absence of limiting standards leaves the citizen at the 'mercy of the officers' whim or caprice.' * * *

''Nor can the failure to give a 'satisfactory account' cure the defects. This final prerequisite to arrest merely enhances the uncertainties of the statute in view of the imprecision inherent in the word 'satisfactory.' No statutory guidance is supplied or even hinted at as to what constitutes a satisfactory account. This leaves too much discretion in the hands of the police and the courts.''

We are in agreement with the reasoning in the above cases. and are of the opinion that the vice inherent in the qualifying terminology of this ordinance under scrutiny is likewise its lack of standards to guide the citizen, the police and the courts. In effect, this portion of the ordinance ''leaves the public uncertain as to the conduct it

prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Giaccio* v. *Pennsylvania* (1966), 382 U. S. 399, 402.

See, also, the annotations in 25 A. L. R. 3d 792 and 836, which deal with the validity of vagrancy and loitering statutes and ordinances.

We conclude, and so hold, that this portion of the ordinance lacks "ascertainable standards of guilt" and is so vague and indefinite that "men of common intelligence must necessarily guess at its meaning and differ as to its application." It therefore violates the due-process clause of the Fourteenth Amendment, and consequently is invalid.

The judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, DUNCAN, KRENZLER and LEACH, JJ., concur.

KRENZLER, J., of the Eighth Appellate District, sitting for STERN, J.