The STATE of Ohio, Appellee,

v.

GRIFFIN, Appellant.

[Cite as *State v. Griffin* (1999), 133 Ohio App.3d 490.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

Nos. L–98–1207 and L–98–1206.

Decided March 19, 1999.

*Julia R. Bates,* Lucas County Prosecuting Attorney, and *Timothy A. Westrick,* Assistant Prosecuting Attorney, for appellee.

*Carol L. Damrauer,* for appellant.

SHERCK, Judge.

This matter comes to us from a judgment entry issued by the Lucas County Court of Common Pleas denying appellant's motion to suppress evidence of drug possession discovered when he was searched after being arrested for loitering in a high crime area. Because we conclude that the trial court erred by not suppressing the evidence, we reverse.

On January 3, 1998, Toledo Police officers were on patrol in a marked police vehicle. It was approximately 5:30 p.m. and dark. They parked approximately one block away from a convenience store.

At the suppression hearing, the officers testified that this location was considered a "problem area" because of high levels of loitering and "lots of people selling drugs or drinking in public." The police had designated the site as a "POPS" target, a six-month old acronym for "police oriented problem solving." According to the officers, their responsibilities in POPS areas included stopping people to investigate any suspicious activity. In the words of one of the officers, "where there's a trouble area and [it is] classified as a POP or problem area, * * * there's zero tolerance."

Exactly what the officers observed while parked a block away was heavily disputed during the suppression hearing. According to the officers, they saw one person stopping cars and pedestrians in front of and adjacent to the store, which had posted a "no loitering" sign. The police identified appellant as that person.

According to the officers, appellant was loitering under Toledo Municipal Code 509.08(b)(2), which prohibits loitering in a public place while obstructing the free passage of pedestrians or vehicles. Toledo Municipal Code 509.08, Loitering, provides:

"(a) Definition. 'Loitering' means remaining idle in essentially one location and includes the colloquial expression 'hanging around'.

"(b) Certain Types of Loitering Prohibited:

"(1) Breach the peace; or create a disturbance or unreasonable annoyance to the comfort and repose of any person;

"(2) *Obstruct the free passage of pedestrians or vehicles;*

"(3) Obstruct, molest or physically interfere with any person;

"(4) Engage in conduct which creates an unreasonable risk of physical harm, including making remarks of an offensive, disgusting or insulting nature to another person;

"(5) Solicit others for the purpose of engaging in illicit sexual conduct." (Emphasis added.)

One officer, who had four years of experience, testified that he first observed appellant standing near the sidewalk approximately ten feet from a pay telephone in the store's parking lot. A second man was on the telephone. According to the officer:

"[A] vehicle pulled into the parking lot and stopped on the sidewalk, and the Defendant approached the vehicle for approximately [a] couple seconds. The vehicle pulled away.

"At that time several other people—persons were walking near the pay phone within that vicinity. [Appellant] was apparently approaching them also, and they would walk away. Basically that is what he was up to."

That officer testified that appellant obstructed the free passage of *pedestrians* on the sidewalk as follows:

"Several people were going to the store. He was on the sidewalk area, and he approached them. They had to stop and walk around him and kept going in. They did stop. It was real briefly exchange words [*sic* ], and they walked around, but yeah, he was obstructing free passage."

On cross-examination, the officer explained that he saw at least four or five people walking towards the store, who, after allegedly being confronted by appellant, walked around him and went into the store.

According to the officer, appellant obstructed the free passage of *vehicles* as follows:

"The sidewalk crosses the driveway, as vehicles were trying to pull into the driveway he was standing basically at the driveway. That was obstructing. They had to stop. They couldn't go through the driveway, because he was standing there."

On cross-examination, the officer explained he saw two vehicles:

"There was [sic] two vehicles. The first one that he—the vehicle pulled in the driveway. He was on the walk. He approached the car. Okay, maybe approximately five seconds went by, and the vehicle went into the * * * parking lot."

The second officer, who also had four years' experience, testified:

"The Defendant at the time when we first observed him was at the telephone, and in the period of approximately five minutes he had approached the telephone twice, approached people on the sidewalk that were walking westbound * * *, and then had approached three cars too that were parked and parked facing southbound from [the convenience] store."

Unlike the first officer, the second officer recalled that appellant carried a bag.

Eventually, the officers pulled their vehicle into the driveway, blocking it so that appellant could not escape. They called both appellant and the man on the telephone over to the vehicle. According to the officers, even though the man on the telephone had not approached others, they suspected him of being with appellant. The first officer considered him to be loitering because before that man used the phone, "he was standing on the sidewalk also, not obstructing the free passage like the Defendant was, but it appeared he was with him. We wanted to find out who he was." Neither officer observed drug use or sales.

The officers testified that appellant did not initially respond to their request to come over to their patrol car. The officers described the defendant as "foggy" and less than clear. The officers searched both men, testifying that they told appellant he was being arrested for loitering and then searched him incident to the arrest.

As a result of their search, the officers found approximately three grams of cocaine in appellant's clothing. The man on the telephone was *Terry* searched"; he was permitted to leave. Appellant was transported to police headquarters. The second officer could not remember the contents of appellant's bag or what became of the bag after appellant's arrest.

Appellant's version of events was substantially different. He testified he had gone to the convenience store to get cheese for the dinner his aunt was cooking. After leaving the store with his bag of groceries, he briefly spoke with a stranger who had asked him for a cigarette. He walked in the direction of his aunt's home and did not observe others on the street. Appellant further testified that he

cooperated with officers and that he never did recover his bag of groceries. After the conclusion of the suppression hearing, the court denied appellant's motion. Appellant then entered a no contest plea to one count of possessing crack cocaine, in violation of R.C. 2925.11(A) and (C)(4)(b). The trial court found appellant guilty and sentenced him to serve seventeen months of incarceration.

Appellant sets forth the following sole assignment of error on appeal:

"The trial court erred when it denied defendant–appellant's motion to suppress in violation of his rights under the Ohio and U.S. Constitution[s]."

## I Introduction

■ Two principles underscore our decision. First, courts generally disfavor loitering laws. This is so because loitering and vagrancy laws have the potential to punish persons who use public streets innocently or in the exercise of constitutional rights. *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 377, 618 N.E.2d 138, 141–142.

■ Second, this court has repeatedly decried law enforcement's practice of using the lawfulness of an initial stop to support a "fishing expedition" for evidence of a crime in automobile search cases. *State v. Montoya* (Mar. 6, 1998), Lucas App. No. L–97–1226, unreported, 1998 WL 114325; see *Knowles v. Iowa* (1998), 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (police may not search a vehicle incident to issuing a traffic citation without an independent basis to search for weapons to protect the officer from danger or to discover and preserve evidence of crime unrelated to traffic stop). In our view, that same aversion applies to stops, whether lawful or unlawful, of persons on the street in a "high-crime" area.

■ While the danger to the community and police officers in locations labeled "high crime areas" cannot be minimized, we also recognize that "an average person who lives or works in a high-crime neighborhood [must] be sure whether just standing on the street in front of his or her home or workplace might 'manifest' something illegal." *Akron v. Rowland*, 67 Ohio St.3d at 383, 618 N.E.2d at 146. The fact that conduct occurs in a "high crime area" does not eliminate the requirement that law enforcement must have probable cause to arrest a person. Law enforcement personnel cannot rely on their own "zero tolerance" policy to arrest people for pretexual loitering law violations in high crime areas for the purpose of conducting a fishing expedition for evidence of other crimes.

II Analysis

■ Appellate review of a trial court's denial of a motion to suppress is limited. The trial court as trier of fact is in the best position to determine questions of fact and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981–982. We must accept the trial court's findings of fact if supported by competent, credible evidence. *Maumee v. Johnson* (1993), 90 Ohio App.3d 169, 171, 628 N.E.2d 115, 116; *State v. Byrd* (Nov. 1, 1996), Williams App. No. WM–96–007, unreported, 1996 WL 629443; *State v. Montoya, supra.* Accepting those facts as true, this court must " 'determine as a matter of law without deference to the trial court's conclusion, whether they meet the applicable standard.' " *Byrd, supra,* quoting *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141, 1143.

The trial court's only conclusions of fact concerned police credibility. Its legal conclusions were explicitly premised on resolving credibility in favor of the police officers' testimony.

Our review of the record suggests that the testimony of one officer was not entirely reconcilable with that of the other officer. However, we are without the benefit of the demonstrative drawings used to illustrate the officers' testimony during the suppression hearing.

■ Although appellant testified at the suppression hearing, presenting evidence to contradict the officers' testimony, the trial court's findings of fact are supported by credible evidence. However, appellant's momentary approaches to others within a five-minute period did not provide probable cause to arrest him for loitering when nothing showed these contacts significantly impeded pedestrians or vehicles.

■ Police officers have no authority to arrest an individual without probable cause to reasonably believe that the suspect has committed, is committing, or is about to commit an offense. *State v. Young* (June 14, 1991), Lucas App. No. L–90–273, unreported, 1991 WL 106081. The officers' testimony that relates to a handful of brief encounters with people or cars does not provide objective evidence that appellant had obstructed pedestrians or vehicles. The officers' testimony centered only on their subjective conclusions that appellant had obstructed pedestrians and vehicles. Without actual evidence that appellant obstructed anyone, the officers had no probable cause to arrest appellant for loitering. Because the initial arrest for loitering was invalid, the court erred by denying appellant's motion to suppress evidence of drugs found incident to his arrest. *Id.*

Toledo Municipal Code 509.08 does not define the term "obstruct." However, the loitering statute requires more than *de minimis* interference with pedestrians or vehicles, which can be more easily interpreted as innocent conduct rather than criminal conduct.

Loitering and vagrancy statutes were often determined to be unconstitutionally vague in the 1970s and 1980s. Such laws "did not give ordinary people notice of what conduct was prohibited and because [they] gave the police unfettered discretion to make arrests." *Akron v. Rowland*, 67 Ohio St.3d at 378, 618 N.E.2d at 142. To avoid constitutional challenge, loitering laws now add at least one additional specific element to punish "loitering" of a demonstrably harmful type. See *Chicago v. Morales* (1997), 177 Ill.2d 440, 452, 227 Ill.Dec. 130, 687 N.E.2d 53 (ordinance regulating loitering with gang members); *Toledo v. Townsend* (Sep. 25, 1981), Lucas App. No. L–81–115, unreported, 1981 WL 5792.

The Toledo Municipal Code provision prohibiting loitering that obstructs the free passage of pedestrians or vehicles has been held to be sufficiently definite and precise to give notice because it does not permit an arrest based on simple loitering alone, but requires loitering, plus some additional objective conduct, such as obstructing the free passage of pedestrians or vehicles. *Toledo v. Townsend, supra.* However, to allow the briefest of encounters to be considered obstruction of pedestrians or vehicles, and therefore loitering, punishes conduct that is not demonstrably harmful and allows a return to "street sweeping" loitering and vagrancy laws previously condemned in cases such as *Papachristou v. Jacksonville* (1972), 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115–116.

The police testified that defendant stopped varying numbers of cars and pedestrians heading into the store to talk to them. But other than the police officers' legal conclusions that this was "obstruction," there was no testimony that anyone was significantly hindered, obstructed, or impeded. *State v. Smith* (Dec. 23, 1993), Cuyahoga App. No. 64506, unreported, 1993 WL 536068. "Merely stopping someone to talk to them cannot be characterized as hindering, obstructing or impeding." *Id.* The Ohio Supreme Court has rejected observations of minimal public activity such as "wandering" as too subjective to provide probable cause to arrest for a violation of "suspicious person" statutes. *Columbus v. Thompson* (1971), 25 Ohio St.2d 26, 31–32, 54 O.O.2d 162, 165–166, 266 N.E.2d 571, 574–575. These brief stops, in such a short time period, did not obstruct any pedestrian or vehicle in a demonstrably harmful manner to indicate appellant was loitering instead of approaching people for "sociability reasons." *Akron v. Rowland*, 67 Ohio St.3d at 376, 618 N.E.2d at 141.

In addition, courts have consulted dictionaries to define other crimes that include the element of "obstruction," such as obstruction of justice or official business. R.C. 2921.31. "Obstruct" is defined in Black's Law Dictionary (6 Ed.1990) 1077 as:

"To hinder or prevent from progress, check, stop, also to retard the progress of, make accomplishment of difficult or slow. * * * To be or come in the way of or to cut off the sight of an object. To block up; to interpose obstacles; to render impassable; to fill with barriers or impediments, as to obstruct a road or way. To impede; to interpose impediments to the hindrance or frustration of some act or service * * *. As applied to navigable waters, to 'obstruct' them is to interpose such impediments in the way of free and open navigation that vessels are thereby prevented from going where ordinarily they have a right to go or where they may find it necessary to go in their maneuvers."

However, the term that needs to be defined is not merely "obstruct." To construe the ordinance's complete phrase, "obstruct the free passage," we note that an "obstruction to navigation" is defined as "[a]ny unnecessary interference with the free movements of vessels." *Id.* at 1078.

In this case, there was no testimony showing that any pedestrian or vehicle was frustrated in or prevented from reaching its destination. No evidence suggested any pedestrian or vehicle was unnecessarily thrust into a dangerous situation or as much as momentarily inconvenienced. See *Cleveland Hts. v. Lettich* (Aug. 18, 1983), Cuyahoga App. No. 45981, unreported, 1983 WL 4611. Any "impediment" consisted of the briefest of encounters, which would be as consistent with innocent behavior, such as asking for directions, passing out political leaflets, or stating religious or political beliefs, as it would be with suspicious behavior of drug activity.

"People with entirely legitimate and lawful purposes will not always be able to make their purposes apparent to an observing police officer. For example, a person waiting to hail a taxi, resting on a corner during a jog, or stepping into a doorway to evade a rain shower has a perfectly legitimate purpose in all these scenarios; however, that purpose will rarely be apparent to an observer." *Chicago v. Morales,* 177 Ill.2d at 452, 227 Ill.Dec. 130, 687 N.E.2d at 61.

■ We reject appellee's contention that because appellant's conduct occurred in a high crime area, the officers properly arrested appellant for loitering. The United States Supreme Court has said that being "in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct." *Brown v. Texas* (1979), 443 U.S. 47, 52, 99

S.Ct. 2637, 2641, 61 L.Ed.2d 357, 362–363. However, the Ohio Supreme Court has approved considering that the conduct occurred in a "high crime area" if it is combined with other factors that justify investigatory stops and arrests in such areas. *State v. Bobo* (1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489, 491–492; but, see, *State v. Carter* (1994), 69 Ohio St.3d 57, 65, 630 N.E.2d 355, 361–362.

These police officers were understandably suspicious about the encounters they observed in a high crime area. Yet, the officers admitted they did not have probable cause to arrest for any drug-trafficking offense. Their police report of the incident referred to the drug activity in the area, but made no mention whatsoever of any pedestrian or vehicular obstruction:

"Listed suspect * * * in front of * * * Store talking to another black male near the no loitering sign. Upon stopping the suspect in the area of high drug activity, and placing the suspect under arrest, * * * crack cocaine was found."

Other than the fact that this was a high crime area, which the police chose to designate as a "no tolerance" zone, there are no other factors giving rise to probable cause, as opposed to mere suspicion, to arrest and search appellant. An inarticulate hunch cannot provide the basis for an investigative stop, let alone an arrest. *State v. Carter*, 69 Ohio St.3d at 66, 630 N.E.2d at 362–363.. The fact that appellant was approaching cars and pedestrians in a high crime, or even a high drug area, does not eliminate the need to have probable cause to arrest for loitering in order to conduct a search. It is significant that although one officer testified the man using the pay telephone was "loitering," and the other officer testified they just wanted to investigate, the man was searched, presumably under the guise of a *Terry* search for weapons.[1] Unlike appellant, however, he was free to go after a search produced no contraband.

---

1. "A police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest," provided the police officer can point to *specific and articulable facts* which warrant that intrusion. *Terry v. Ohio* (1968), 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906–907. " 'A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.' " *State v. Bobo* (1988), 37 Ohio St.3d 177, 180, 524 N.E.2d 489, 492, quoting *Adams v. Williams* (1972), 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617. " ' ' "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," ' he may conduct a limited protective search for concealed weapons. * * * *The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence* * * *." *Id.* at 180, 524 N.E.2d at 492, quoting *Adams v. Williams*, 407 U.S. at 146, 92 S.Ct. at 1923, 32 L.Ed. 2d at 617, and *Terry v. Ohio*, 392 U.S. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 907–908.

## Conclusion

While there may be situations where police observe an individual stopping so many people to such a degree it is obvious that the individual is obstructing the free flow of traffic, this is not one of them. Subjectively interpreting the loitering laws to provide probable cause to arrest in order to search an individual in a high crime or drug area, where there was no probable cause to believe any drug offense had occurred, creates a convenient but impermissible tool for " 'harsh and discriminatory enforcement by local prosecuting officials against particular groups deemed to merit their displeasure.' " *Papachristou v. Jacksonville*, 405 U.S. 156, 170, 92 S.Ct. 839, 847, 31 L.Ed.2d 110, 120, quoting *Thornhill v. Alabama* (1940), 310 U.S. 88, 97–98, 60 S.Ct. 736, 742, 84 L.Ed. 1093, 1100.

Accordingly appellant's sole assignment of error is well taken.

The judgment of the Lucas County Court of Common Pleas is reversed, and the cause is remanded for proceedings consistent with this opinion. Costs are assessed to appellee.

*Judgment reversed.*

KNEPPER, J., concurs.

MELVIN L. RESNICK, J., dissents.

MELVIN L. RESNICK, J., dissenting.

In view of the findings by the lower court that he believed the police officers, this court cannot second guess such a determination. There is nothing in the ordinance that requires the obstruction of persons be substantial as the majority would require. Moreover, there is testimony that cars were forced to stop. (See pages 493–494 of majority opinion.) This is not a legal conclusion. For the above reasons, I respectfully dissent.