[Cite as *State v. Cooper*, 2019-Ohio-2925.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | Case No. 18-CA-90 |
| BRANDON COOPER | |
| Defendant-Appellant | O P I N IO N |


CHARACTER OF PROCEEDINGS:      Appeal from the Licking County Municipal
                               Court, Case No. 18-CRB-844


JUDGMENT:                      Reversed and Remanded

DATE OF JUDGMENT ENTRY:        July 16, 2019


APPEARANCES:


For Plaintiff-Appellee                 For Defendant-Appellant

AMY DAVISON                            KEVIN J. GALL
Assistant City Law Director            33 West Main Street, Suite 109
40 W. Main Street                      Newark, Ohio  43055
Newark, Ohio  43055

*Hoffman, P.J.*

{¶1} Appellant Brandon Cooper appeals the judgment entered by the Licking County Municipal Court convicting him of violating Newark Municipal Ordinance §618.051(C)(1), prohibitions concerning companion animals, and sentencing him to ninety days incarceration at the Licking County Justice Center, with 45 days suspended. Appellee is the state of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2} Appellant and his girlfriend, Syndel McWhorter, moved to a home on 12th Street in Newark, Ohio, in May of 2017. They owned a pit bull when they moved in. When the dog disappeared, they told their neighbor the dog knocked their baby off the couch, so they rehomed the dog. Appellant and McWhorter then acquired a husky puppy and a pit bull puppy named Buckeye. In February or March of 2018, McWhorter told the neighbor the husky bit the baby, and they gave the husky away to become a service dog.

{¶3} During the morning of April 2, 2018, the neighbor's husband saw McWhorter digging a hole. When he told his wife, she said, "Oh my God, they've killed another dog." Tr. 83. She observed Appellant headed toward the shed behind the house carrying a blanket. When she did not see Buckeye during the next 24 hours, the neighbor called animal control.

{¶4} Toby Wills, the Newark Animal Control Agent, responded to the complaint. Appellant and McWhorter initially told him they rehomed Buckeye because she bit one of their kids. When Wills asked if they buried something behind the shed, they admitted they buried Buckeye. Appellant told Wills he put Buckeye down because the dog bit their child. Appellant told Wills he shot the dog with an air gun, and took Wills to the shed to show Wills where he shot the dog. Wills asked for an explanation as to what Appellant

meant by an "air gun." Appellant told Wills he used a nail gun hooked to an air compressor to shoot the dog. They dug up the dog's body for further examination.

{¶5} Appellant told Wills the dog had been in a cage in the house. He and McWhorter heard the baby cry. The baby had his hand on the cage, and an indentation on his finger from the dog's tooth. Wills looked at the child's finger, which had a small indentation from the dog bite. The skin was not broken, and Appellant did not seek medical treatment for the child. Appellant told Wills he did not seek information from a veterinarian about euthanizing the dog because they didn't have money.

{¶6} Appellant was charged with violating Newark Municipal Ordinance §618.051(C)(1), prohibitions concerning companion animals, and also with falsification. The case proceeded to jury trial in the Licking County Municipal Court.

{¶7} Dr. Jody Houser, the veterinarian who examined the dog post mortem, testified at trial. She testified the dog was a young puppy, and nipping or play-biting is normal behavior for a young puppy. She testified the use of a nail gun was not an acceptable form of euthanasia. A nail gun causes a penetrating wound, which might not work quickly, causing distress for the animal. She testified either of the nail shots to the head of the puppy could have caused death, but not likely without suffering.

{¶8} McWhorter testified in Appellant's defense at trial. She testified they got Buckeye in November of 2017, when their baby was six months old. They had already rehomed a pit bull puppy named Brutus because of his behavior around the baby, and had rehomed the husky puppy because of behavior issues around the baby. She testified they decided to use a nail gun to kill Buckeye at least ten minutes after the dog bit the baby. She testified she cried and held the dog while Appellant shot Buckeye in the skull.

She conceded the dog was not actively attacking the baby when they made the decision to shoot the dog, and admitted they did not seek information about euthanasia, puppy training, or rehoming Buckeye. She testified they had previously spent $300 to euthanize a dog, and could not afford to spend the money to euthanize Buckeye.

{¶9} Appellant was found not guilty of falsification, but guilty of prohibitions concerning companion animals. He was sentenced to 90 days in jail with 45 days suspended. It is from the September 20, 2018 judgment of conviction and sentence Appellant prosecutes this appeal, assigning as error:

I. DEFENDANT-APPELLANT'S CONVICTION VIOLATES DUE PROCESS BECAUSE NEWARK CITY ORDINANCE 618.051(C)(1) IS VOID FOR VAGUENESS.

II. THE TRIAL COURT [ERRED] TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT BY FAILING TO STRIKE A JUROR FOR CAUSE AFTER VOIR DIRE DEMONSTRATED THE JUROR COULD NOT BE FAIR AND IMPARTIAL, THUS VIOLATING THE DEFENDANT'S RIGHTS GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

III. THE DEFENDANT'S CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE

UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1 AND 16

OF THE OHIO CONSTITUTION.

I.

**{¶10}** In his first assignment of error, Appellant argues his conviction violates due process because Newark City Ordinance 618.051(C)(1) is void for vagueness.

**{¶11}** A constitutional question is not ripe for judicial review where the case can be disposed of upon other grounds. *Hyle v. Porter*, 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899, ¶ 9 (2008). Because we are reversing Appellant's conviction and remanding for new trial based on Appellant's second assignment of error, the constitutional question is not yet ripe for our review.

**{¶12}** The first assignment of error is overruled as premature.

II.

**{¶13}** Appellant argues the trial court erred in failing to excuse a juror, Wes Pancher, for cause.

**{¶14}** "[T]he selection and qualification of jurors are largely under the control of the trial court and, unless an abuse of discretion is clearly shown with respect to rulings thereon, they will not constitute ground for reversal." *State v. Trummer*, 114 Ohio App.3d 456, 461, 683 N.E.2d 392 (1996), *citing Berk v. Matthews*, 53 Ohio St.3d 161 (1990). A juror " * * * ought not to suffer a challenge for cause when the court is satisfied from an examination of the prospective juror or from other evidence that the prospective juror will render an impartial verdict according to the law and the evidence submitted to the jury at

the trial." *State v. Duerr*, 8 Ohio App.3d 404, 457 N.E.2d 843, paragraph two of the syllabus (1982).

**{¶15}** During voir dire, counsel for Appellant told the jurors a dog was put down with the use of a nail gun. He asked, "Does anyone find that those facts in and of themselves, no matter what other evidence is presented, would be enough to convict a person of a crime?" Tr. 50.

**{¶16}** Several jurors responded in the affirmative to this question, including Mr. Fancher, who stated:

I'd have to agree with that. There's other ways to do it. There's no guarantee that that's going to be a humane way to put the dog down. A bullet or lethal injection is going to be a lot more likely to do it in a humane way, a lot quicker. The chances of just injuring the dog and not putting it down (inaudible).

**{¶17}** Tr. 52.

**{¶18}** Counsel for Appellant then asked again which jurors under no circumstances could find use of a nail gun to put down a puppy to be acceptable conduct. Several jurors, including Mr. Fancher, raised their hands. Tr. 55.

**{¶19}** No attempt was made by the State or the court to rehabilitate Fancher, or to question him further concerning whether he could decide the case fairly and set aside his personal views on use of a nail gun to put down a dog. The court later set forth on the record Appellant challenged Fancher and the others expressing this view for cause,

and the court declined to excuse those jurors for cause because they did not indicate they could not be fair and impartial, and they had previously indicated they would be able to follow the instructions of law as given to them by the court. Tr. 261. Appellant exercised all his peremptory challenges, and Fancher was seated on the jury.

{¶20} Although the trial court overruled the challenge to Fancher on the basis Fancher indicated he could be fair and impartial and follow the court's instructions, he did so prior to specific questioning concerning use of a nail gun to euthanize a dog. Fancher indicated several times he felt under no circumstances would the use of a nail gun be acceptable. Fancher responded in the affirmative to counsel's question he felt the use of a nail gun in and of itself, no matter what other evidence was presented in the case, was sufficient to convict Appellant of a crime. Despite his earlier generalized indication he could be fair and impartial, Fancher's response to specific questioning concerning the use of a nail gun reflected a predisposition to find Appellant guilty without regard to the other evidence. Fancher was not subsequently rehabilitated by the prosecutor or the trial court, and did not thereafter indicate he could set aside his personal beliefs and decide the case on the instructions of law as given to him by the court. We find the trial court abused its discretion in failing to remove Fancher from the jury for cause.

{¶21} The second assignment of error is sustained.

III.

{¶22} In his third assignment of error, Appellant argues the judgment of conviction is not supported by sufficient evidence.

{¶23} Based on our disposition of the second assignment of error, Appellant's conviction is reversed and the case is remanded for new trial. However, this assignment

of error is not rendered moot by our determination a new trial is required. The Double Jeopardy Clause bars retrial if a reversal was based upon a finding the evidence was legally insufficient to support the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387–88, 1997–Ohio–52, 678 N.E.2d 541 (1997), *citing Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Therefore, Appellant's claim the judgment is not supported by sufficient evidence is not moot, because if Appellant is correct the evidence is insufficient, retrial would be barred by the Double Jeopardy Clause.

**{¶24}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶25}** Appellant was convicted of violating Newark City Ordinance 618.015(C)(1):

> (C) No person who confines or who is the custodian or caretaker of a companion animal shall negligently do any of the following:

> (1) Torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty against the companion animal.

**{¶26}** "Negligently" is defined by R.C. 2901.22(D):

A person acts negligently when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that the person's conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that such circumstances may exist.

{¶27} Appellant argues Dr. Houser could not testify Buckeye suffered or felt any pain. He argues McWhorter testified they were out of options regarding the dog, as it was becoming increasingly aggressive, they could not find a new home for the dog, they were unable to correct the dog's behavior, and they could not afford to have the dog euthanized by a veterinarian.

{¶28} Appellant admitted to Wills he and McWhorter took no steps to inquire about the cost of veterinary euthanasia, and did not attempt to rehome the dog prior to shooting the dog with a nail gun. Dr. Houser testified she would never agree a dog should be killed by this method. She testified the use of a nail gun may not cause immediate death, and while she could not testify the dog suffered by the method employed by Appellant to kill the dog, she also could not be sure the dog did not suffer. Wills testified the baby had only a small indentation on its finger, and Appellant did not seek medical care for the child. Dr. Houser further testified nipping and play-biting is normal behavior for a puppy. The neighbor testified Buckeye had always been a nice dog, and her husband would pet the dog over the fence. We find the State presented sufficient evidence, if believed by a

jury, Appellant needlessly killed the dog, or committed an act of cruelty by the manner he used to euthanize the dog.

**{¶29}** The third assignment of error is overruled.

**{¶30}** The judgment of the Licking County Municipal Court is reversed.  This case is remanded to that court for further proceedings according to law, consistent with this opinion.


By: Hoffman, P.J.

Baldwin, J.  and

Wise, Earle, J. concur