[Cite as *State v. Cooper*, 2020-Ohio-3748.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P. J. |
| Appellee | Hon. John W. Wise, J. |
| | Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2019 CA 00102 |
| BRANDON COOPER | |
| | |
| Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:    Criminal Appeal from the Municipal Court,
Case No. 18CRB00844

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    July 17, 2020

APPEARANCES:

| For Appellee | For Appellant |
|---|---|
| AMY S. DAVISON | JERMAINE COLQUITT |
| NEWARK CITY LAW DIRECTOR | 33 West Main Street |
| 40 West Main Street, Fourth Floor | Suite 109 |
| Newark, Ohio 43055 | Newark, Ohio 43055 |

*Wise, John, J.*

{¶1} Appellant, Brandon Cooper, appeals the judgment entered by the Licking County Municipal Court convicting him of violating Newark Codified Ordinance 618.051(c)(1), prohibitions concerning companion animals, and sentencing him to ninety days incarceration at the Licking County Justice Center, with 45 days suspended. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

**STATEMENT OF THE FACTS AND CASE**

{¶2} In April of 2018, Appellant killed his pit bull puppy, Buckeye, by shooting it twice in the head with a nail gun.

{¶3} Prior to killing Buckeye, Appellant and his girlfriend, Syndel McWhorter, owned both Buckeye and another dog, Grey, a husky. After Buckeye was spayed, she began acting aggressive towards Grey, so Appellant rehomed Grey.

{¶4} On that morning the neighbor observed Appellant headed to the shed behind the house carrying a blanket. When she did not see Buckeye at all the next day, she called animal control.

{¶5} Toby Wills, the Newark Animal Control Agent, responded to the complaint. Appellant McWhorter initially told him they rehomed Buckeye because she bit one of their kids. When Wills asked if they buried something behind the shed, they admitted it was Buckeye.

{¶6} Appellant testified that Buckeye's aggressive behavior escalated until eventually Buckeye bit Appellant's son, who at the time was left unattended in the same room as Buckeye. At the time of the bite, Buckeye was in her cage. Appellant testified after this event, he decided he needed to euthanize the puppy; however, he did not have

the money to pay a veterinarian to euthanize Buckeye. Ms. McWhorter took Buckeye out to the shed and was petting him as Appellant shot the puppy twice in the back of the head with a nail gun. Appellant testified that he did not look into placing Buckeye at an animal shelter, take the puppy to see the vet, or contact any shelter or animal rescue organizations.

{¶7} At trial Dr. Jody Houser, a veterinarian, testified as to the American Veterinary Medical Association's ("AVMA") guidelines on how to euthanize pets. These guidelines are explicit as to who should euthanize a pet, the training required to euthanize a pet, and how it should be done. The AVMA guidelines state an animal should be euthanized by law enforcement or other trained professionals. Euthanasia should be performed by such individuals only in an emergency such as the animal is suffering or is an imminent danger to a human.

{¶8} Dr. Houser testified that euthanasia should be used only by trained personnel, such as animal control or law enforcement, in emergency situations. The AVMA guidelines do not list financial status as an emergency in which to euthanize a dog. It also does not permit a lay person from using a nail gun to euthanize a pet. Dr. Houser further discussed that euthanasia means, "good death," and that the hospital she works at tries to minimize stress as much as possible for the animal.

{¶9} Dr. Houser also testified as to other options the veterinarian hospital discusses with seeking to euthanize out-of-control pets. For example, behavior consultations may be set up, trainers may be consulted, and in extremely rare cases, rehoming or euthanizing the pet is necessary.

{¶10} Appellant was charged with Prohibitions Concerning Companion Animals via filing the complaint on April 17, 2018.

{¶11} Appellant entered a written plea of Not Guilty on April 27, 2018. Appellant filed a motion to dismiss on August 21, 2018.

{¶12} The trial court denied said motion on August 23, 2018.

{¶13} A jury found Appellant guilty on one charge of prohibitions concerning companion animals in violation of Newark Codified Ordinance 618.051(c)(1) on September 20, 2018.

{¶14} Appellant appealed from this conviction based on three assignments of error. The first, Appellant's conviction violates due process as Newark Codified Ordinance 618.051(c)(1) is void for vagueness. *State v. Cooper*, 5th Dist. Licking No. 18-CA-90, 2019-Ohio-2925. Second, the trial court erred to the substantial prejudice of the defendant by failing to strike a juror for cause after voir dire demonstrated the juror could not be fair and impartial, thus violating the defendant's rights guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. *Id.* Third, the defendant's conviction is not supported by sufficient evidence in violation of the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1 and 16 of the Ohio Constitution. *Id.*

{¶15} On July 16, 2019, this Court reversed the original conviction based on the Appellant's aforementioned second assignment of error, holding that the trial court abused their discretion by failing to remove a juror, Mr. Fancher, from the jury. Mr. Fancher responded that the use of a nail gun, without regard to any other evidence, would

be enough to convict Appellant under the statute, and the prosecutor did not rehabilitate Mr. Fancher. *Id.*

{¶16} On August 28, 2019, Appellant renewed his motion to dismiss and requested an expert witness on this case. The court denied both motions.

{¶17} A jury trial commenced on September 19, 2019, at which time Appellant was found guilty again of one count of Prohibitions Concerning Companion Animals in violation of Newark Codified Ordinance 618.051(c)(1).

## ASSIGNMENTS OF ERROR

{¶18} On October 23, 2019, Appellant filed a notice of appeal. He herein raises the following five Assignments of Error:

{¶19} "I. WHETHER THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO DISMISS BECAUSE NEWARK CODIFIED ORDINANCE 618.051(c)(1) IS UNCONSTITUTIONALLY VAGUE ON ITS FACE AND AS APPLIED IN THIS CASE.

{¶20} "II. WHETHER THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ADMITTED TESTIMONY REGARDING THE AVMA GUIDELINES.

{¶21} "III. WHETHER THE PROSECUTOR'S STATEMENTS DURING CLOSING ARGUMENT DEPRIVED THE APPELLANT OF A FAIR TRIAL.

{¶22} "IV. WHETHER THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION FOR EXPERT FEES.

{¶23} "V. WHETHER THE JURY'S GUILTY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

**I.**

{¶24} In his First Assignment of Error, Appellant argues that the statute, "No person who confines or who is the custodian or caretaker of a companion animal shall negligently torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commits an act of cruelty against the companion animal," is unconstitutionally vague. N.M.O. 618.051 (c)(1). We disagree.

{¶25} The determination of a statute's constitutionality is a question of law to be reviewed de novo by the appellate court. *See State v. Whites Landing Fisheries,* 6th Dist. Erie No. E-13-021, 2014-Ohio-1314, at ¶13.

{¶26} As created by the legislature, Ohio statutes are strongly presumed to be constitutional. *State v. Anderson* (1991)*,* 57 Ohio St.3d 168. In considering a statute as void for vagueness, a court must determine whether the law affords a reasonable individual of ordinary intelligence fair notice and sufficient definition and guidance to enable him to conform his conduct to the law. *Norwood v. Horney,* 110 Ohio St. 3d 353, 380. The Supreme Court of Ohio recognizes limitations on the English language to be both specific and reasonably brief, so prohibitions should be set out in terms that "an ordinary person exercising ordinary common sense can sufficiently understand and comply" with them. *Columbus v. Kim*, 118 Ohio St.3d 93, 2008-Ohio-1817, 886 N.E.2d 217.

{¶27} The void for vagueness doctrine does not require statutes to be drafted with scientific precision. *State v. Anderson* (1991), 57 Ohio St.3d 168, 174. A three part test has been adopted by the Ohio Supreme Court which must be applied when examining the void-for-vagueness doctrine. *Papachristou v. City of Jacksonville*, 405 U.S. 156; *State*

*v. Collier*, 62 Ohio St.3d 267. First, "the statute must provide adequate notice and fair warning to persons of ordinary intelligence so that they can conform their conduct to the dictates of the statute." *Id.* Second, the statute cannot permit arbitrary and discriminatory enforcement. *Id.* Third, the statute cannot unreasonably hinder fundamental constitutional freedoms. *Id.*

{¶28} Appellant argues the statute is unconstitutionally vague because the phrases "needlessly kill" and "unnecessary or unjustifiable pain or suffering" are unconstitutionally vague. In his brief, Appellant argues that there are many possible activities that are never prosecuted, but may fall within the terms of "negligently" or "needlessly," it is up to an individual's interpretation.

{¶29} However, the term "negligently" is defined by R.C. 2901.22(D):

> A person acts negligently when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that the person's conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that such circumstances may exist.

{¶30} "Needlessly" must be interpreted as a reasonable person of common intelligence would understand the term.  In *State v. Rawson*, 10th Dist. No. 14AP-1023, 2016-Ohio-1403, 62 N.E.3d 880, the Court held the defendant, who also could not afford a veterinarian, could have consulted a veterinarian about the cost or contacted the humane society. *Id.* The defendant in *Rawson*, had to, "take reasonable means to alleviate the dog's suffering." *Id.* In the case before this Court, Appellant had the same

options available to him. He could have contacted a veterinarian, the humane society, or a shelter. He chose not to do so. Instead, a mere fifteen minutes after his puppy bit his unsupervised one-year old child, he killed the puppy by shooting her twice in the head with a nail gun. Thus, an ordinary person exercising ordinary common sense would readily understand killing the puppy before exhausting such options as "needlessly killing" the animal.

{¶31} Appellants' First Assignment of Error is overruled.

**II.**

{¶32} In his Second Assignment of Error, Appellant argues the trial court committed plain error by admitting into evidence testimony on the AVMA guidelines on euthanizing companion animals as it is irrelevant, or if relevant its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. We disagree.

{¶33} As Appellant did not object to the admission of AVMA guidelines on the euthanizing of companion animals, we review this matter under the plain error standard of review. Plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long* 53 Ohio St.2d 91. Plain error will only be invoked if, but for the error, the outcome of the trial would have been different. *Id.*

{¶34} Appellant argues that the admission of the AVMA guidelines and the testimony of Dr. Houser, a veterinarian, were improperly allowed as the statute does not require adherence to these guidelines and therefore are not relevant or misleading to the jury. Under the Ohio Rules of Evidence, to the extent an expert witness relies on a learned

treatise, statements contained in such a treatise may be read into evidence. Ohio Evid. R. 803(18). Such evidence must be relevant. Relevant evidence must have "a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ohio Evid. R. 401. In *State ex rel. Ohio Soc. for the Prevention of Cruelty to Animals, Inc. v. Hocking Cty. Bd. Of Commrs.* 4th Dist. Hocking No. 13CA2, 2014-Ohio-3348, the AVMA guidelines were admitted as Learned Treatise testimony to the extent they were relied upon by the expert.

{¶35} As the AVMA guidelines would be properly admitted hearsay testimony describing the training, considerations, experiences and procedures used when euthanizing a pet to ensure the companion animal experiences the least amount of stress as possible are relevant.  In the case before this Court, Dr. Houser's testimony about the AVMA guidelines on euthanizing pets was both relevant and the risk of unfair prejudice did not outweigh their probative value. Therefore, we are unpersuaded that the admission of AVMA guidelines is plain error.

{¶36} Appellants' Second Assignment of Error is overruled.

**III.**

{¶37} In his Third Assignment of Error, Appellant argues the prosecutor made inappropriate and inflammatory comments during closing arguments, including statements regarding her own personal experience with recently euthanizing a pet, to the point the statements prejudicially affected the substantial rights of the accused. We disagree.

{¶38} As Appellant did not object to the argument at trial, the appellate standard of review is limited to plain error. *State v. White* 82 Ohio St.3d 16. Plain error will only be invoked if, but for the error, the outcome of the trial would have been different. *State v. Long* 53 Ohio St.2d 91.

{¶39} Appellant first argues the prosecutor injected an example from her own life of recently euthanizing a dog. In the second instance, Appellant states the prosecutor inflamed the passions or prejudices of the jury for comments related to the euthanasia of pets, including defining euthanasia as a "good death."

{¶40} Regarding Appellant's first argument, it is improper for the prosecutor to discuss personal experiences not admitted into evidence. However, these statements were neither outcome determinative nor unduly prejudicial, and therefore, do not constitute reversible error.

{¶41} Appellant also argues the prosecutor improperly inflamed the passions and prejudices of the jury with several comments related to the euthanasia of pets, including wrongly defining the term euthanasia as meaning, "good death," and asking the jurors to remember the death of their own pets.

{¶42} Appellant begins by arguing that a simple Google search of euthanasia shows this is not the meaning. However, Appellant completely ignores that his Google search was not admitted into evidence at trial, but Dr. Houser testified to the court that euthanasia means, "good death." As such, the prosecutor discussing evidence admitted at trial during closing arguments is not improper.

{¶43} Finally, Appellant essentially argues that the prosecutor should not have asked the jurors to call to mind the death of their own pets. While a prosecutor may not

make excessively emotional arguments which may inflame the jury's sensibilities, the prosecutor is entitled to latitude when making closing arguments. *State v. Tibbets*, 92 Ohio St.3d 146. However, "a conviction based solely on the inflammation of fears and passions, rather than proof of guilt, requires reversal. *State v. Keenan*, 66 Ohio St.3d 402. In *Keenan*, the prosecutor's closing argument was more about the state of his own emotions, only making glancing references to the facts of the case. *Id.* In this case, the prosecutor spoke of her own personal experience with euthanizing her own pet. She stated, "never once in the back of my mind at least when I did it in February was I thinking how much this is going to cost me." Tr. at 212. She goes on to describe how the only thing she could think about was how to ease her pet's suffering. However, these statements make up only a small portion of the prosecutor's closing arguments, which is largely based on the evidence which was presented at trial speaking directly to testimony from the Appellant and Dr. Houser. As such, we conclude that a review of the prosecutor's closing argument in its totality did not deny Cooper of a fair trial.

{¶44} Appellant's Third Assignment of Error is overruled.

**IV.**

{¶45} In his Fourth Assignment of Error, Appellant argues the trial court erred in denying defense counsel's motion for expert fees in violation of *Ake v. Oklahoma*, 470 U.S. 68. We disagree.

{¶46} Appellant argues in *Ake* the United States Supreme Court recognizes the right of a criminal defendant to a court appointed expert witness. *Id.* However, the Supreme Court's view is much narrower than that. The Court held that costs for an expert were required to be provided when necessary to prepare an effective defense based on

mental condition. The Court has chosen to recognize this narrow right because of the pivotal role psychiatry plays in criminal proceedings. *Id*.

{¶47} The Ohio Supreme Court has a broader rule that applies to expert witnesses in general. *State v. Mason,* 82 Ohio St.3d 144. At trial the defendant has the burden of establishing the need for expert assistance, specifically by making a "particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial. *Id*. "A trial court possesses broad discretion with respect to the admission of evidence." *State v. West*, 5th Dist. No. 16 CA 11, 2017-Ohio-4055.

{¶48} This Court is limited to an abuse of discretion standard of review. *Id*. While the State had Dr. Houser testify as an expert in euthanasia for companion animals, Appellant was attempting to retain an expert witness to proffer testimony about the way in which to humanely slaughter livestock. As the humane slaughter of livestock is not at issue in the trial, the denial of such a witness would not result in an unfair trial. We find the trial court did not abuse its discretion with the denial of fees for the expert witness's testimony.

{¶49} Appellants' Fourth Assignment of Error is overruled.

**V.**

{¶50} In his Fifth Assignment of Error, Appellant argues the jury's guilty verdict is against the manifest weight of the evidence and is not supported by sufficient evidence. We disagree.

{¶51} Sufficiency of evidence and manifest weight of the evidence are separate and distinct legal standards. *State v. Thompkins*, 78 Ohio St.3d 380. Essentially,

sufficiency is a test of adequacy. *Id.* A sufficiency of the evidence standard requires the appellate court to examine the evidence admitted at trial, in the light most favorable to the prosecution, to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d *259.*

{¶52} In contrast to the sufficiency of the evidence analysis, when reviewing a weight of the evidence argument, the appellate court reviews the entire record, weighing the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts of evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380.

{¶53} Under a weight of the evidence argument, the appellate court will consider the same evidence as when analyzing the Appellant's sufficiency of evidence argument. Appellant argues the jury clearly lost its way as their conviction of Appellant based on the total weight of the evidence was a manifest miscarriage of justice.

{¶54} The State filed a complaint alleging Appellant violated Newark City Ordinance 618.051(c)(1):

> (c) No person who confines or is the custodian or caretaker of a companion animal shall negligently do any of the following:

> (1) Torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty against a companion animal.

{¶55} At trial the State produced evidence that Appellant, by his own testimony, was the caretaker of Buckeye, and that he shot Buckeye in the head twice with a nail gun to kill the animal. Appellant admitted to Wills he took no steps to inquire about affordable veterinary services, speaking with the humane society, or taking the puppy to a shelter. Appellant testified the only steps he took was attempting to rehome the dog via Craigslist and Facebook. Appellant did not contact any veterinarians about reducing the price of euthanasia. He contacted no animal shelters nor humane societies about taking the puppy. All he did was wait fifteen minutes after the puppy allegedly bit his unsupervised son and then shot the puppy in the head twice with a nail gun. We find the State presented sufficient evidence, if believed by a jury, that Appellant needlessly killed the dog, or committed an act of cruelty. Our review of the entire record fails to persuade us that the jury lost its way and created a manifest miscarriage of justice. Appellant was not convicted against the manifest weight of the evidence.

{¶56} Appellant's Fifth Assignment of Error is overruled

{¶57} For the foregoing reasons, the judgment of the Municipal Court of Licking County, Ohio, is hereby affirmed.

By: Wise, John, J.
Hoffman, P. J., and
Wise, Earle, J., concur.

JWW/b 0701