[Cite as *State v. Llewellyn*, 2021-Ohio-2396.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO | : | | JUDGES: |
| | : | | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | | Hon. Craig Baldwin, J. |
| | : | | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | | |
| | : | | |
| RYAN LLEWELLYN | : | | Case No. 19CA000034 |
| | : | | |
| Defendant-Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the  Court of Common
Pleas, Case No. 2019CR02-0049

JUDGMENT:     Affirmed in Part and Reversed in
Part

DATE OF JUDGMENT:     July 14, 2021

APPEARANCES:

For Plaintiff-Appellee     For Defendant-Appellant

Charles T. McConville     John S. Pyle
Nicole E. Derr     Knox County Public Defender
117 East High Street     110 East High Street
Suite 234     Mount Vernon, OH  43050
Mount Vernon, OH  43050

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Ryan Llewellyn appeals his conviction and sentence from the Knox County Court of Common Pleas. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEURAL HISTORY

{¶ 2}   On April 6, 2015, Appellant was indicted on one count of rape and one count of unlawful sexual conduct with a minor. He later entered a plea of guilty to an amended count of gross sexual imposition and in February of 2016, was sentenced to 15 months in prison. Appellant was additionally classified as a Tier I sex offender.

{¶ 3}   On February 11, 2019, the Knox County Grand Jury returned an indictment charging Appellant with two counts of failure to provide change of address in violation of R.C. 2950.05(F)(1), felonies of the third degree. Count one alleged a failure to update the sheriff with a change of address, and count two alleged a failure to update internet identifiers. At his February 13, 2019 arraignment, Appellant entered pleas of not guilty.

{¶ 4}   On May 24, 2019, Appellant filed a Motion to Dismiss Count II on constitutional grounds, arguing that R.C. 2950.05(F)(1) was unconstitutionally vague. On June 20, 2019, the state filed a memorandum in opposition. Following a hearing, the trial court denied the motion by judgment entry filed July 1, 2019.

{¶ 5}   Appellant then opted to proceed to a bench trial which was held on July 16, 2019.

{¶ 6}   At trial, Lieutenant Penny Lamp of the Knox County Sheriff's Office testified she is the jail administrator and oversees sex offender registration. She testified she assisted Deputy Tony McFarland on January 29, 2019 with Appellant's registration.

{¶ 7}   Appellant was homeless the day he appeared at the jail to register. Lamp testified that Deputy McFarland went through the registration with Appellant and explained to Appellant what was required of a homeless offender. She testified a homeless offender is required to call in nightly and give a detailed description of where they plan to stay. Lamp stated Appellant initialed and signed the sex offender registration form indicating he understood his duties under the same. The registration indicated Appellant's address was "homeless Mount Vernon, Ohio 43050." State's exhibit 1.

{¶ 8}   Lamp testified that from January 29, 2019 to February 7, 2019, Appellant failed to call in on a nightly basis as directed.

{¶ 9}   On cross-examination, Lamp admitted that there was no duty listed on the sex offender registration form for Appellant to call into the Sheriff's Department every night. On redirect, she testified the form required the registrant to include a detailed description of his or her address such as the Walmart parking lot. She testified that the Knox County Sheriff's Office required homeless registrants to call in nightly to report their location and they would not accept a statement from a registrant that he or she could be located in Mount Vernon, Ohio.

{¶ 10} Sergeant Tim Knell of the Knox County Sheriff's Office testified that he and Deputy Annette Mahon investigated Appellant's failure to report. He too testified that when a sex offender registers as homeless, they are required to call in every day and say where they will be staying for the night. If an offender fails to call in, the failure is documented. Sergeant Knell testified that on nine separate days, Appellant did not call in his location. He further testified Appellant had three Facebook accounts in his name which he had failed to list on his sex offender registration form.

{¶ 11} On cross-examination, Sergeant Knell explained he found Appellant's Facebook pages by going into Facebook and typing in appellant's name in the search bar. The Facebook accounts displayed pictures of Appellant. Knell did not try to communicate with Appellant via Facebook. Knell stated Appellant would have to have a user name and password to communicate on Facebook. He admitted that anyone could create a Facebook page in Appellant's name without Appellant's permission or knowledge.

{¶ 12} After the State rested, Appellant made a Crim.R. 29 motion to dismiss both counts, which was denied. Appellant then testified that between January 31 and February 7, 2019, he did not change any internet identifiers and that the emails that he listed as his identifiers were the same ones that had been listed in his prior sex offender registrations. He testified that he did not use Facebook anymore and had not used it since 2017 and would have had to create a whole new Facebook account to send messages.

{¶ 13} Appellant testified that he could not have used the old Facebook account because he forgot his password and to reset the password, a code would have to be sent to his wife's father's number. Appellant stated he and his wife had not been together since the first time that he went to prison. According to Appellant, his profile picture on Facebook, was from 2017 before he got his tattoos. He testified that he got his tattoos on his right forearm while in prison after March 7, 2018. The tattoos were not reflected in the Facebook picture. Appellant further testified that if he had created a new Facebook account, he would have listed a Florida address rather than Mount Vernon since he was from Florida. Appellant testified that he could not even log onto Facebook to take down the old Facebook pages.

{¶ 14} Appellant further stated he listed his residence as homeless in Mount Vernon, Ohio. He testified when he left jail on January 29, 2019, he did not have a phone as he could not afford one. He stated between January 29, 2019 and February 7, 2019, he slept one time in the pillow section at Walmart and that he stole a TV once to pay for a motel room. Appellant testified that he never stayed in one place more than two nights and no one told him that he had to call in every night. He testified that if he had been told, he would have just walked up to the jail. Appellant further stated there was nothing on the sex offender registration form which required him to call in every night.

{¶ 15} On cross-examination, Appellant testified that he was never told that he had to provide a list of where he could be found, but admitted that the registration form specified that if a residence change was not to a fixed address, he had to include a detailed description of the place or places that he intended to stay. He never listed the motel or Walmart as places where he stayed. Appellant further testified he was aware of his duty to register his Facebook accounts, but had no way to get onto Facebook.

{¶ 16} In a Judgment Entry filed on July 19, 2019, the trial court found appellant guilty of both counts. As memorialized in a Sentencing Entry filed on September 3, 2019, appellant was sentenced to 43 months incarceration.

{¶ 17} Appellant filed an appeal and the matter is now before this court for consideration. He raises six assignments of error for our consideration as follow:

I

{¶ 18} "THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVIVTION (SIC) FOR A VIOLATION OF R.C. 2950.05(A) AS ALLEGED IN COUNT I."

II

{¶ 19} "THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVIVTION (SIC) FOR A VIOLATION OF R.C. 2950.05(D) AS ALLEGED IN COUNT II."

III

{¶ 20} "THE APPELLANT' (SIC) CONVICTION FOR COUNT I WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

IV

{¶ 21} "THE APPELLANT'S CONVICTION FOR COUNT II WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

V

{¶ 22} "THE TRIAL COURT ERRED BY FAILING TO ADMIT THE APPELLANT'S PROFFERED EVIDENCE CONCERNING WHAT HE HAD TO DO IN ORDER TO DELETE A FACEBOOK PAGE."

VI

{¶ 23} "THE TRIAL COURT ERRED BY DENYING THE APPLLANT'S (SIC) MOTION TO DISMISS COUNT II BASED ON THE APPELLANT' (SIC) SHOWING THAT THE STATUTE UNDER WHICH HE WAS CHARGED WAS UNCONSTITUTIONALLY VAUGE (SIC)."

I, III

{¶ 24} For ease of discussion, we address some of Appellant's arguments together and out of order. In his first and third assignments of error, Appellant argues his conviction for failure to provide change of address as set forth in count one of the indictment is not

supported by sufficient evidence and is against the manifest weight of the evidence. We agree.

{¶ 25} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 26} Count one alleges appellant violated R.C. 2950.05 (F)(1) when he "knowingly failed to provide notice of a residence address change to the sheriff…."

{¶ 27} R.C. 2950.05 (F)(1) states in pertinent part: "No person who is required to notify a sheriff of a change of address pursuant to division (A) of this section * * * shall fail to notify the appropriate sheriff in accordance with that division."

{¶ 28} R.C. 2950.05(A) requires an offender to provide written notice of a change of address at least twenty days prior to such change of address. However, when the offender is homeless and cannot give a specific address, as is the case here, the statute provides in relevant part:

> If a residence address change is not to a fixed address, the offender * * * shall include in that notice a detailed description of the place or places at which the offender * * * intends to stay and, not later than the end of the first business day immediately following the day on which the person obtains a fixed residence address, shall provide that sheriff written notice of that fixed residence address.

{¶ 29} Because Appellant was homeless, pursuant to the statute he had to tell the sheriff where he intended to stay. He did so by providing the sheriff with the best information he had - he intended to stay in Mt. Vernon. The sheriff accepted the location and told him he had to call in each day with the specific location he intended to stay each night. Appellant argues he was never instructed to call in each day. But whether or not he was so instructed we find irrelevant. The statute sets forth no requirement that a homeless individual must report on a daily basis if he has no fixed address.

{¶ 30} The statute does require an additional reporting requirement after the person obtains a fixed address. Here, however, there is no evidence or claim that Appellant ever obtained a fixed address, thus the reporting requirement was never

triggered. We therefore find Appellant's conviction on count one of the indictment was not supported by sufficient evidence and is against the manifest weight of the evidence.

{¶ 31} Assignments of error one and three are sustained.

II, IV

{¶ 32} In his second and fourth assignments of error, appellant argues his conviction for count two of the indictment, failing to provide notice of internet identifiers, is also not supported by sufficient evidence and is against the manifest weight of the evidence.  We disagree.

{¶ 33} Appellant was charged pursuant to R.C. 2950.05 (F)(1) which states in relevant part "No person who is required to notify a sheriff of a change or address * * * or a change in identifiers pursuant to division (D) of this section shall fail to notify the appropriate sheriff in accordance with that division."

{¶ 34} Division (D) indicates in pertinent part:

> [T]he offender * * * shall provide written notice, within three days of the change, of any change in vehicle information, email addresses, internet identifiers, or telephone numbers registered to or used by the offender or registrant to the sheriff with whom the offender or registrant has most recently registered under division (A)(2), (3), or (4) of section 2950.04 or 2950.041 of the Revised Code.

{¶ 35} Appellant argues his conviction on count two of the indictment is against the manifest weight and sufficiency of the evidence because there was no evidence

presented to support a conclusion that the Facebook pages were registered to him. He further argues that in any event, he had no access to the Facebook pages and therefore cannot be convicted of failing to list the pages on his registration form when he re-registered in January 2019.

{¶ 36} Sergeant Knell testified he performed a search on Facebook for any pages registered to Appellant. Upon doing so, he received three results all bearing Appellant's name and photos of Appellant. Transcript of trial (T.) 43-46, state's exhibits 2, 3, and 4.

{¶ 37} State's exhibit one is Appellant's sex offender registration form. T. at 33-34, 58-59. The registration form lists no Facebook accounts. T. 43-45.

{¶ 38} Appellant argues he did not have access to two of the accounts because he could not recall the password and had no way to retrieve the password and did not create the third account. Even if we do not consider the account Appellant claimed he did not create, R.C. 2950.05(D) requires Appellant to disclose any internet identifiers *registered* to him, not just those he had access to. At no point did Appellant deny two of the Facebook accounts belonged to him. In fact, Appellant testified he had " * * * registered these Facebooks in 2015 when I first caught my original case of GSI." T. 40. Appellant's own testimony indicates the accounts were registered to him and further that he understood he was required to register his Facebook accounts because he had previously done so.

{¶ 39} We therefore find sufficient evidence to support Appellants conviction for count two of the indictment and further find his conviction is not against the manifest weight of the evidence.

{¶ 40} Appellant's second and fourth assignments of error are overruled.

V

{¶ 41} In his fifth assignment of error, Appellant argues the trial court erred in failing to consider evidence proffered by Appellant to demonstrate he could not delete the Facebook pages. We disagree.

{¶ 42} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343 (1987) paragraph two of the syllabus. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Generally, all relevant evidence is admissible. Evid.R. 402.

{¶ 43} The evidence Appellant sought to have admitted into evidence consisted of a screenshot of a Google search for instructions on how to remove a Facebook page.

{¶ 44} As noted above, R.C. 2950.05(D) required Appellant to register internet identifiers *registered* to him. Although much of Appellant's argument centers on whether or not he could delete the accounts, had access the accounts, or could communicate with others through the account, whether he could or could not do those things was not relevant to a conviction under R.C. 2950.05(D).

{¶ 45} The trial court properly excluded irrelevant evidence. Appellant's fifth assignment of error is overruled.

VI

{¶ 46} In his final assignment of error, Appellant argues R.C. 2950.05(D) is unconstitutionally vague. We disagree.

{¶ 47} This Court conducts a de novo review of a trial court's decision concerning a defendant's motion to dismiss based upon a constitutional challenge to the statute. *City of Alliance v. Carbone*, 181 Ohio App.3d 500, 909 N.E.2d 688 (5th Dist. 2009); *State v. Cooper*, 5th Dist. Licking No. 2019CA 00102, 2020-Ohio-3748, 2020 WL 4036895.

{¶ 48} All enacted legislation enjoys a strong presumption of constitutionality. *State v. Dorso*, 4 Ohio St.3d 60, 61, 446 N.E.2d 449 (1983). This presumption remains unless the challenger proves beyond a reasonable doubt that the legislation is clearly unconstitutional. *State v. Williams*, 88 Ohio St.3d 513, 521, 728 N.E.2d 342 (2000).

{¶ 49} There are two types of challenges to the constitutionality of a statute, a facial challenge or an as-applied challenge. Appellant raises a facial challenge which requires him to "show that upon examining a statute, an individual of ordinary intelligence would not understand what he is required to do under the law." *State v. Anderson*, 57 Ohio St.3d 168, 566 N.E.2d 1224 (1991). A challenger asserting a facial challenge must prove, beyond a reasonable doubt, that the statute was so unclear he could not reasonably understand it prohibited the acts in which he engaged. *Id.*

{¶ 50} Appellant argues R.C. 2950.05(D) fails to adequately inform registrants which internet identifiers must be listed in their identification forms. Appellant faults the trial court for failing to address the matter head-on and instead reasoning that the Federal Sexual Offender Registration and Notification Act (SORNA), which mandates every state to maintain registries of sex offenders and that such registries, shall include "internet identifiers," the definition of which can be found in 34 USCS section 20916. That section defines "internet identifiers" as email addresses and any other designations used for self-identification, communicating, or posting online.

{¶ 51} The trial court went on, however, to first note statutes enacted in Ohio are presumed constitutional and that Appellant bore the burden of proving the statute unconstitutionally vague beyond a reasonable doubt. Decision and Entry on Defendant's Motion to Dismiss Count II of the Indictment on Constitutional Grounds of Void for Vagueness, July 1, 2019 at 7-8. The trial court went on to note the Supreme Court of Ohio has found Chapter 2950 does not prohibit any conduct, but rather is a remedial measure. *Id.* At 8 citing *State v. Williams*, 88 Ohio St.3d 513, 532-534, 728 N.E. 342 (2000). The trial court found remedial measures require less specificity to survive a void-for-vagueness challenge then do criminal statutes. *Id.* Citing *Salem v. Ohio Liquor Control Comm.* 34 Ohio St.2d 244, 246, 298 N.E.2d 138 (1973).

{¶ 52} Appellant testified at the hearing that he thought merely suppling his email addresses was sufficient to comply with R.C. 2950.05(D) because using his email address was how he accessed Facebook. Motion Hearing at 14-15, 17. But in reaching its conclusion, the trial court also noted Appellant admitted he had registered the Facebook accounts in question on a previous occasion. See Motion Hearing at 36. The trial court concluded Appellant had a fair understanding that "internet identifiers" included social media sites and that he was required to report the same. We agree with most of the trial court's analysis.

{¶ 53} Sex offender registration statutes promulgated pursuant to Megan's Law were at one time considered civil and remedial in nature rather than punitive. However, the Supreme Court of Ohio has more recently held the enhanced sex-offender reporting and notification requirements contained in R.C. Chapter 2950 per the Adam Walsh Act

are punitive. See *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 16.

{¶ 54} Even so, occasional doubt or confusion about the applicability of a statute does not render the statute vague on its face. *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.* 455 U.S. 489, 495-496, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). We find a person of ordinary intelligence would understand "internet identifiers" as used in R.C. 2950.05(D) includes any way of communicating via the internet including Facebook. Indeed, on at least one occasion Appellant herein understood that requirement. We conclude therefore Appellant failed to prove beyond a reasonable doubt, that the statute was so unclear that he could not reasonably understand that it prohibited the acts in which he engaged – failing to disclose his Facebook Accounts. See State v. Anderson, 57 Ohio St.3d 168, 170, 566 N.E.2d 122 (1991).

{¶ 55} The final assignment of error is overruled.

{¶ 56} The judgment of the Knox County Court of Common Pleas is affirmed in part and reversed in part.

By Wise, Earle, J.

Hoffman, P.J. and

Baldwin, J. concur.

EEW/rw